IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Rose Marie Tyler,             )    Civil Action No.: 8:15-cv-04457-JDA

                    )

          Plaintiff,    )     **ORDER**

                    )

     vs.              )

                    )

Nancy A. Berryhill[1],       )

Acting Commissioner of Social Security, )

                    )

        Defendant.   )

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a Magistrate Judge [Doc. 10]; and the Order of reference signed by the Honorable R. Bryan Harwell on February 5, 2016 [Doc. 11]. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner is reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

In April 2010, Plaintiff protectively filed an application for DIB, alleging an onset disability date of March 19, 2010. [R. 310–11.] Plaintiff's DIB claim was denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 171–

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.

77.]  Plaintiff requested a hearing before an administrative law judge ("ALJ") and on March 2, 2012, ALJ Peggy McFadden-Elmore conducted a hearing on Plaintiff's claim.  [R. 111–62.]

On May 18, 2012, the ALJ issued a decision finding Plaintiff not disabled under the Social Security Act ("the Act").  [R. 178–93.]  Plaintiff requested Appeals Council review of the ALJ's decision and, the Appeals Council remanded the case for further consideration.  [R. 194–205].  On remand, the ALJ held a second hearing on November 25, 2013.  [R. 48–104.]  On May 13, 2014, the ALJ issued a second decision, again finding Plaintiff not disabled under the Act.  [R. 21–33.]  At Step 1[2], the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2014, and had not engaged in substantial gainful activity during the period from her alleged onset date of March 19, 2010, through the date last insured.  [R. 23, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments:  bilateral carpal tunnel syndrome, status-post carpal tunnel release of the right hand; rheumatoid arthritis; right knee patellofemoral chondrosis, status-post right knee arthroscopy; coronary artery disease with stent placement; and lumbar spondylosis.  [R. 23, Finding 3.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 26, Finding 4.]  The ALJ specifically found that there was no evidence of any impairment or combination of impairments that approached listing level severity under Listings 1.02, 1.04, 4.04, and 14.09.  [*Id.*]

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b); with lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently; with standing and/or walking for about six hours during an eight-hour workday; with sitting for about six hours during an eight-hour workday; with no more than occasional climbing of ladders, ropes, or scaffolds; with no more than occasional crawling; with no more than frequent climbing of ramps and stairs; with no more than frequent balancing, stooping, kneeling, and crouching; with no more than frequent handling and fingering bilaterally; and with avoidance of concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards.

[R. 26–27, Finding 5.] Based on this RFC finding, the ALJ determined Plaintiff was capable of performing her past relevant work as a childcare attendant and administrative clerk. [R. 32, Finding 6.] Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from March 19, 2010, the alleged onset date, through the date of the ALJ's decision. [R. 32, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision and the Appeals Council declined review. [R. 1–5.] Plaintiff filed this action for judicial review on November 2, 2015. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains multiple legal and factual errors warranting the reversal and remand of the case.

[Doc. 19.][3]  Specifically, Plaintiff contends the ALJ erred by (1) failing to accord proper weight to the opinion Plaintiff's treating rheumatologist, Dr. Kathleen P. Flint ("Dr. Flint") [*id.* at 10–15]; (2) failing to provide the consultative examiner with Plaintiff's medical records from her treating physician [*id.* at 15–16]; (3) failing to consider the side effects of Plaintiff's medications in evaluating her credibility [*id.* at 16–19]; and (4) improperly finding that Plaintiff was capable of past relevant work [*id.* at 19–20].

The Commissioner, on the other hand, contends the ALJ's decision should be affirmed because the decisions is supported by substantial evidence and is free from reversible legal error. [Doc. 20.] Specifically, the Commissioner contends the ALJ properly evaluated Dr. Flint's opinion under the regulations [*id.* at 8–11]; reasonably found Plaintiff's subjective complaints, including those of disabling medication-related side effects, were only partially credible [*id.* at 12–16]; and properly found Plaintiff capable of her past relevant work [*id.* at 16–18].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687

---

[3]Plaintiff also filed a Reply brief raising substantially the same arguments.  [*See* Doc. 21.]

(S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the

courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor

6

the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

7

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &
Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme
Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.
*See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply
the more stringent *Borders* inquiry.

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.   *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.   20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a

combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).   To meet this burden, the

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3)

supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

### IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

### V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as

15

a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects

16

> of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb

17

credibility findings that are based on a witness's demeanor.  But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations

are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Medication Side Effects**

Plaintiff argues the ALJ's decision fails to document any consideration of how

Plaintiff is limited by the side effects of her medication.  Plaintiff points out that the ALJ

> makes no assessment whatsoever in her credibility evaluation
> of Plaintiff's persistent use of narcotic, analgesic, and
> anti-inflammatory medications over this period, including
> Opana (a Morphine compound), Hydrocodone, Oxycodone,
> Gabapentin, Hydrozol, Tramadol, Meloxicam, Mobic,
> Methotrexate, and even an experimental drug when the
> Methotrexate failed (Tr. 334, 361, 376, 365, 384, 401-402,
> 913, 947-950). She fails to consider at all Plaintiff's consistent
> allegations of drowsiness and other side effects from these
> medications, both in Testimony (Tr. 72, 79-80, 87-88, 149) and
> in prior claims forms and statements to her doctors (Tr. 361,
> 365, 375, 694). The ALJ also failed to consider "other"
> measures Plaintiff employed over the years in efforts to relieve
> her pain, including use of a heating pad (Tr. 83) and subjecting
> herself to multiple injections in her knees (Tr. 894, 906),
> lumbar spine (Tr. 895, 905), wrists (Tr. 896), and abdomen
> with the experimental drug for her RA after the Methotrexate
> failed (Tr. 947-950).

[Doc. 19 at 18.]  Plaintiff contends the ALJ's "failure to properly assess Plaintiff's subjective

symptoms directly violates *Craig* and SSR 96-7p and constitutes additional error of law."

[*Id*. at 19.]

The Commissioner contends, however, that the ALJ adequately considered all of

Plaintiff's subjective complaints, including the side effects of her medication. [Doc. 20 at

12–16.]  The Commissioner asserts that, despite Plaintiff's alleged drowsiness and other

18

alleged limitations, her medical records reveal no attention problems and Plaintiff was able to concentrate sufficiently to drive, handle finances, and fully participate in the administrative hearing.  [*Id*. at 14.]

### *Evaluating Medication Side Effects*

In reaching a determination regarding a claimant's RFC, the ALJ must base the decision on "all of the relevant evidence in the case record" including the side effects of medication. SSR 96–8P, 1996 WL 374184 (July 2, 1996).  However, "[t]he ALJ is not required to accept unquestioningly all alleged side effects of medications; complaints of side effects may properly be discredited by inconsistent evidence." *Goodwater v. Barnhart,* 579 F.Supp.2d 746, 759 (D.S.C. 2007)*, citing Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).  Such evidence includes: the use and effects of medications, the claimant's ability to perform daily activities, the consistency of the claimant's allegations, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers.  SSR 96–7p, 1996 WL 374186 (July 2, 1996).

Where the ALJ makes a determination regarding a claimant's credibility, the ALJ must adequately "explain the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."  SSR 96–7p.  If the ALJ points to substantial evidence in support of her decision and adequately explains the reasons for her finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

*Record Evidence Regarding Medication Side Effects*

In her disability report, Plaintiff indicated she was taking the following medications with the indicated side effects:

| Name of Medication | Side Effects |
|---|---|
| Asprin | N/A |
| Benazepril | Drowsiness and dry cough |
| Fexofenadine | Not listed |
| Hydrochlorothiazide | [A]void exposure to sun |
| Hydroxyzine | Drowsiness |
| Mag-oxide | Diarrhea |
| Meloxicam | Drowsiness |
| Neurontin | Not listed |
| Vitamin D | N/A |

[R. 361.]  Plaintiff indicated that she was always sleeping because the medications made her very drowsy.  [R. 365.]

In a subsequent disability report, Plaintiff noted that her condition had worsened and that she was taking the following medications with the indicated side effects:

| Medication | Side Effects |
|---|---|
| Aspirin | None |
| Benazepril | Drowsiness |
| Benzonatate | None |
| Cyclobenzaprine | None |
| Effient | Nose bleeds, easily bruised |
| Fexofenadine | Fatigue |
| Gabapentin | Drowsiness |

20

| HCT | Frequent restroom trips |
|---|---|
| Hydroxyz | Drowsiness |
| Hydrozol | Drowsiness, upset stomach |
| Magozid | None |
| Pravastatin | None |
| Prednisone | Headaches |
| Tramadol | Dizziness |
| Vitamin D | None |

[R. 372, 374–75.]

In the March 2, 2012, hearing before the ALJ, the ALJ asked Plaintiff about the medications she was taking, but did not ask about any side effects of these medications. [R. 128.] On examination by her attorney, Plaintiff testified that her medications made her drowsy and that she slept a lot; her fluid pill made her urinate frequently; and Lipitor caused her to have some joint issues and pain. [R. 149.] During the November 25, 2013 hearing, Plaintiff testified to taking Vinzaprocrat, Gabapentin, Atrovastatin, Allegra, Amrix, Meclizine, Montelukast, Singular, Citalopram, Vibyrd, Oxycodone, Aripixrazole, Hydroxyzine, Benzonatate, Cyclobenzaprine, and Opana. [R. 65–67.] While Plaintiff was asked about the medications she was taking, again, the ALJ did not inquire about side effects. [*Id.*] On examination by her attorney, Plaintiff testified that almost all of her medications made her sleepy, drowsy and forgetful. [R. 87.] Plaintiff testified that one medication in particular, Opana, a 24-hour medication for pain, caused her to sleep for about five of the twenty-four hours after taking the medication. [*Id.*] On examination by the ALJ, the vocational expert testified that a person using drugs related to pain and experiencing the after-effects

21

testified to by Plaintiff would not be able to work, even at the sedentary, unskilled level. [R. 99.]

### ALJ's Analysis

In determining Plaintiff's RFC, the ALJ followed a two-step process in which she first determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. [R. 27.] The ALJ noted as follows:

> The medical evidence establishes that the claimant has bilateral carpal tunnel syndrome with right carpal tunnel release, rheumatoid arthritis, right knee patellofemoral chondrosis with right knee arthroscopy, coronary artery disease with stent placement, and lumbar spondylosis, as discussed below, which affect her ability to lift and carry, stand and walk, reduce her capacity for certain postural movements, and restrict her from certain work environments. Due to bilateral carpal tunnel syndrome with right carpal tunnel release, the claimant is further limited to no more than frequent handling and fingering bilaterally.

> The medical evidence of record shows that the claimant has been diagnosed with bilateral carpal tunnel syndrome (Exhibits 12F and 14F). On March 19, 2010, the claimant underwent right carpal tunnel release after reportedly experiencing a few years of right hand numbness with pain migration up her arm (Exhibit 3F). The evidence of record shows that the claimant received physical therapy following carpal tunnel release (Exhibits 5F and 6F).

> The claimant was referred by Dr. DesChamps to Kathleen P. Flint, M.D. for a rheumatology evaluation. In September 2010, the claimant was diagnosed with rheumatoid arthritis (Exhibit 14F). At that time, treatment notes by Dr. Flint showed that the claimant had an elevated rheumatoid factor at 15, as well as a high sedimentation rate and C-reactive protein (CRP), suggesting inflammatory process (Exhibits 14F and 15F).

[R. 27–28.]

After determining the presence of an impairment or impairments at Step 1, the ALJ, at Step 2, evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which those symptoms limited the claimant's functioning.  [R. 28–30.] Following this two-step process, the ALJ considered Plaintiff's underlying physical and mental impairments and the associated medical records to determine Plaintiff's RFC. [*Id.*]

The ALJ ultimately found that Plaintiff was capable of performing a limited range of light work.  [R. 26–27.]   The ALJ explained her consideration of the objective medical evidence with respect to Plaintiff's alleged limitations as follows:

> The evidence does not show significant strength deficits, circulatory compromise, neurological deficits, persisting muscle spasms, or fibrillations that are often associated with long standing, severe or intense pain, and physical inactivity. While the claimant alleges that she is in bed most of the day, the record does not show that she has reported this extreme level of impairment to any of her treating professionals. Certainly, if the claimant were spending the majority of her day in a near bedridden state as she contends, it would seem logical that she would tell her treating physicians. This failure to report such a debilitating symptom does not bolster the claimant's allegations.

> I find that the claimant's allegations are not fully credible. The evidence of record does not show symptoms or limitations at the severity alleged by the claimant. For example, on May 10, 2010, William M. Rambo, Jr., M.D. noted that the claimant appeared in no distress and had a nicely healed carpal tunnel incision. There was no evidence of infection with intact median nerve motor and sensory functions. The claimant also had a negative Finkelstein's test. Dr. Rambo felt that, with time and exercise, the claimant's symptoms would gradually improve. Furthermore, Dr. Rambo opined that the claimant did not have any disability or work restrictions from his standpoint (Exhibit 5F).

I give significant weight to Dr. Rambo's overall conclusion that the claimant can work. However, additional evidence received at the hearing level shows that the claimant has some work related limitations.

The claimant's allegations are not supported by diagnostic testing or clinical findings noted by her treating physician. For example, electro diagnostic testing performed on August 16, 2010, showed only mild bilateral carpal tunnel syndrome, which was noted as a significant interval improvement (Exhibit 12F).

Additional electro diagnostic testing performed on January 4, 2012, was most consistent with only a mild median nerve mononeuropathy at the wrist on the left side. Dr. Selph advised the claimant to wear wrist splints (Exhibit 30F). Furthermore, on April 25, 2011, Dr. Kim noted on the physical examination that the claimant had normal range of motion, normal strength, and no tenderness of her upper extremities (Exhibit 26F).

As for the claimant's rheumatoid arthritis, Dr. Flint noted on September 16, 2010, that the claimant was able to get up and down from the exam table and the chair without problems. The claimant had intact sensation, good grip, and unremarkable wrists with good range of motion. She also had full range of motion of her elbows with no synovitis or nodules. She had good range of motion of her shoulders with full extension and flexion. There was no evidence of sacroiliac joint tenderness. The claimant had full range of motion of her hips, knees, and ankles.   The claimant's gait was normal (Exhibit 14F). On August 11, 2011, Dr. Flint noted that the claimant had a negative rheumatoid factor with an improved sedimentation rate (Exhibit 25F).

The evidence also contains medical opinions from Dr. Flint regarding the claimant's physical functional capabilities. In a letter from Dr. Flint in March 2012, she indicates that the claimant's joint problems prevent her from working on a regular basis, and that the claimant is permanently and totally disabled (Exhibit 31F).   In a medical source statement in February 2011, Dr. Flint indicated that she does not know what the claimant's ultimate ability/disability will be (Exhibit 35F, with emphasis added). In a rheumatoid arthritis questionnaire from July 2012, Dr. Flint indicates that the claimant has the ability to sit for seven hours, and stand/walk from none to one hour, in

an eight-hour workday; and that she could occasionally lift/carry up to 10 pounds. Dr. Flint also indicated that the claimant would be absent from work more than three times a month (Exhibit 3 8F). In a rheumatoid arthritis questionnaire from January 2014, Dr. Flint indicated that the claimant can sit for six hours, and stand/walk for two hours, in an eight-hour workday; and that she could occasionally lift and carry up to 10 pounds. However, Dr. Flint indicated that the claimant would have absenteeism of more than three times a month (Exhibit 48F). I have given Dr. Flint's findings and conclusions little weight as discussed below.

. . . .

As for the claimant's right knee, Kevin Nahigian, M.D. of Carolina Shoulder and Knee Specialists noted on December 20, 2011 that the claimant had focal tenderness of the medial and lateral patella facets, a positive patella apprehension test, and a positive patella compression test. However, Dr. Nahigian also noted that the claimant had a normal gait, full range of motion of her right knee, no instability, 5/5 strength in all muscle groups, normal sensation, and 2+ and symmetrical reflexes. Furthermore, the record indicates that this examination was performed prior to the claimant's right knee arthroscopy (Exhibit 29F).

As for the claimant's back allegations, diagnostic imaging of the claimant's back does not indicate a disabling back impairment. At an office visit in January 2012 with Dr. Sweet, the claimant rated her pain on an average of eight, on a pain scale of one to ten, with ten being the worst. However, on physical examination of the claimant's back, Dr. Sweet noted that the claimant's low back was really not very tender and the claimant had no swollen joints. Dr. Sweet also noted that the claimant had good range of motion of her neck with no spasm or tenderness. The claimant had a negative straight leg-raising test. She had good strength in all four extremities. Dr. Sweet concluded that the claimant had lumbar spondylosis, but no evidence of a surgical problem of the spine. He recommended continued conservative treatment, and noted that Vicodin seemed reasonable (Exhibit 30F, pages 5-6).

. . . .

Thus, in conclusion, the claimant has conditions and symptoms that may interfere with performance of some work

activities. However, when considering the objective medical evidence, the claimant is able to perform a variety of work.

[R. 29–32.]

### *Analysis*

An ALJ's decision regarding Plaintiff's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186, at *1.  The Ruling states:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96–7p, 1996 WL 374186, at *2; *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (stating that credibility determinations "should refer specifically to the evidence informing the ALJ's conclusion"); *Hatcher v. Secretary*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Hammond*, 765 F.2d at 426 ).  Where appropriate, an ALJ should consider the type, dosage, and side effects of a claimant's medications in reaching his or her decision.  *See* SSR–96–7p (RFC assessment must be based on all of the relevant evidence, including side effects of medication); *see also Hamilton v. Barnhart*, 158 F. App'x 68 (9th Cir. 2005) (Where the record contains evidence supporting a Plaintiff's claims

26

regarding side effects, side effects are a factor to be considered in the formulation of an RFC); *Jackson v. Colvin*, No. 13–1560, 2014 WL 2154260, at * 1 (W.D. Wa. May 22, 2014) ("An ALJ should consider all factors that might have a significant impact on an individual's ability to work, including side effects of medications").

In reaching a determination regarding a claimant's RFC, the ALJ must base the decision on "all of the relevant evidence in the case record" including the side effects of medication. SSR 96–8P, 1996 WL 374184 (July 2, 1996). The ALJ is required to explain "how the evidence supports each conclusion, citing specific medical facts . . . and non-medical evidence." *Id.* In this instance, it is unclear from the ALJ's decision what impact Plaintiff's medication-related side effects had on the RFC determination or what weight was given to Plaintiff's testimony that her pain medication caused her severe sleepiness. The ALJ made no mention of Plaintiff's medication side effects and failed to elicit testimony regarding the same during Plaintiff's hearing. The ALJ also failed to explain how the evidence of medication-related side effects, particularly sleepiness, was weighed in her overall RFC determination. Furthermore, the ALJ failed to explain her consideration of any other efforts taken by Plaintiff to relieve her chronic pain symptoms in weighing Plaintiff's credibility regarding her resulting limitations. This lack of express consideration by the ALJ leaves the Court to conclude that the evidence was not considered. The Court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Because the Court is "left to guess" regarding how the ALJ considered Plaintiff's medication side effects and other attempts to remedy her pain, remand is appropriate. *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir.

27

2015).  Based on the foregoing, the Court cannot determine that the Commissioner's decision is supported by substantial evidence.

**Remaining Allegations of Error**

Because the Court finds that remand is warranted because the ALJ's failed to properly explain her consideration of Plaintiff's medication-related side effects and other attempts to remedy her pain, the Court declines to address Plaintiff's remaining allegations of error.  On remand, however, the ALJ is directed to adequately consider: the side effects of Plaintiff's numerous medications, either independently or in combination with her other impairments, in assessing Plaintiff's RFC and credibility; to assess Dr. Flint's opinion in accordance with the applicable regulations, identifying evidence of record supporting the weight assigned; and consider any additional limitations assessed in determining whether Plaintiff can perform her past relevant work.

## CONCLUSION

Wherefore, based upon the foregoing, it is Ordered that the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Order.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 3, 2017
Greenville, South Carolina

28